**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR5733)
275 Madison Avenue, 34th Floor
New York, New York 10016
Tel: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

Counsel for Plaintiff



12 CIV 8405

RECEIVED NOV 16 2012 U.S.D.C. S.D.N.Y. CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JOHN HOLZMAN, DERIVATIVELY AND ON
BEHALF OF SINOTECH PHARMACEUTICALS,
INC.,

      Plaintiff,

  v.

GUOQIANG XIN, QINGZENG LIU, BOXUN
ZHANG, XIAOXUAN BI, HEQING YAO, JING
LIU, AND DONALD J. PUGLISI,

      Defendants,

  And

SINOTECH ENERGY LIMITED,

      Nominal Defendant.
------------------------------------------------------------X

CASE No.:

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT FOR:

(1) BREACH OF FIDUCIARY DUTY
(2) CORPORATE WASTE
(3) GROSS MISMANAGEMENT

<u>JURY TRIAL DEMANDED</u>

**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

  Plaintiff respectfully submits this Verified Shareholder Derivative Complaint against the defendants named herein and on behalf of nominal defendant SinoTech Energy Limited ("SinoTech" or the "Company") based upon personal knowledge as to himself and his own

1

actions, and as to all other matters, upon information and belief based upon the investigation of counsel.

## INTRODUCTION

1. This is a shareholder derivative action on behalf of Nominal Defendant, SinoTech Energy Limited ("SinoTech " or "the Company") against Defendants Guoqiang Xin ("Xin"), Qingzeng Liu ("Liu"), Boxun Zhang ("Zhang"), Xiaoxuan Bi ("Bi"), Heqing Yao ("Yao"), Jing Liu ("J. Liu"), Donald J. Puglisi ("Puglisi"), collectively, "Individual Defendants" for breach of fiduciary duties owed by them to SinoTech . These breaches, in turn, have substantially injured the Company.

2. As detailed herein, the Individual Defendants, in breach of their fiduciary duties to the Company approved, acquiesced, and/or turned a blind eye to undisclosed related party transactions between majority shareholder defendant Qingzeng Liu, on one hand, and the Company, on the other hand (the "Liu Funds Transfer").

3. SinoTech is an oil services company operating in China. In November 2010, SinoTech commenced an initial public offering of American Depository Shares ("ADS") in the United States ("IPO"), the proceeds were to be used to expand SinoTech's business, by, among other things, purchasing lateral hydraulic units—which are central to SinoTech's business. Proceeds to SinoTech from the IPO were $120 million.

4. The IPO registration statement falsely claimed that defendants would use the $69 million of the IPO Proceeds to purchase lateral hydraulic units to grow SinoTech's business. In reality, SinoTech only used $16 million of the IPO proceeds to purchase such equipment. The Individual Defendants then caused SinoTech to transfer $40 million to Liu between June 30, 2011 and August 17, 2012, and attempted through their action and/or inaction to conceal the true

nature of this transfer.

5. According to the SEC, even after Liu confessed to the Company's Board about the Liu Funds Transfer, the Company retained Liu's as its Chairman.

6. There is no legitimate business reason for the undisclosed transfer of nearly $40 million dollars to Liu, other than to wrongfully enrich defendant Liu at the expense of the Company.

7. When questions about the veracity of the Company's statements began to surface, Defendants attempted to conceal the truth by issuing further lies.

8. As a result of defendants' breaches of fiduciary duties alleged herein, the NASDAQ halted trading in the Company's stock, and eventually the Company's stock was delisted from the NASDAQ, causing serious harm to the Company's reputation and ability to raise funds in the capital markets.  Moreover as a result, the price of SinoTech's ADS fell from its IPO price of $8.50 to a current price of 1 to 2 cents a share.

9. As alleged more fully below, the Company now faces substantial liability in connection with federal securities fraud class action litigation and an SEC civil action that has been filed against it and others based upon the same wrongdoing as alleged herein.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 (a)(2). Plaintiff and Defendants are citizens of difference states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

11. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the conduct complained of herein occurred in this District.

12. SinoTech conducted its IPO in the United States and filed its registration statement and periodic reports with the U.S. Securities and Exchange Commission pursuant to

the federal securities laws. In furtherance of the IPO, the Company appointed a registered agent to accept service of process in any action brought against it in the United States District Court for the Southern District of New York. Many hundreds of if not thousands of SinoTech shareholders who own millions of shares of SinoTech stock reside in the United States and are being sued in class action suits for violations of the U.S. securities laws in this District in connection with the actions of its executives and directors arising from the misconduct alleged herein.

## PARTIES

13. Plaintiff John Holzman ("Plaintiff") resides in and is a citizen of the State of Ohio. Plaintiff is a current shareholder of SinoTech and has continuously held SinoTech stock at all relevant times.

14. Nominal Defendant SinoTech is a Cayman Islands corporation with its principal executive offices located at 3/F, No. 19 Ronghua South Rd., Beijing Economic-Technological Development Area, Beijing, People's Republic of China.

15. Defendant Guoqiang Xin was, at all relevant times, the Company's Chief Executive Officer ("CEO"), and a member of the Board. Xin signed the Form F-6, Amendment No. 1 to the Form F-6 and each of the Form F-1 Registration Statements.

16. Defendant Boxun Zhang was, at all relevant times, the CFO and a member of the Board. Zhang signed the Form F-6, Amendment No. 1 to the Form F-6 (via signature by Xin as attorney-in-fact), the Form F-1, Amendments Nos. 1, 2, 3 and the Registration Statement (via signature by Xin as attorney-in-fact). As CFO, Zhang was responsible for SinoTech's consolidated financial statements, quarterly review of financial statements, and annual audits. On

September 23, 2011, SinoTech announced that Zhang had resigned as CFO and as a Board member, largely attributing the departure to the Liu Funds Transfer.

17. Defendant Liu was, at all relevant times, the Chairman of the Company's Board of Directors and the Company's controlling shareholder. Liu signed the Form F-6, Amendment No. 1 to the Form F-6 (via signature by Xin as attorney-in-fact), the Form F-1, Amendment Nos. 1, 2, 3 and the Registration Statement (via signature by Xin as attorney-in-fact). As detailed herein, as divulged in SinoTech's September 23 Press Release, Mr. Liu facilitated the Liu Funds Transfer. Liu, through his position as the sole director and shareholder of Premium Sino Finance, was a controlling shareholder of SinoTech at all relevant times herein owning more than 51% of the Company's shares.

18. Defendant Xiaoxuan Bi was, at all relevant times, a member of the Board and the Company's "Chief Economist." Bi signed the Form F-6, Amendment No. 1 to the Form F-6 (via signature by Xin as attorney-in-fact), the Form F-1, Amendment Nos. 1, 2, 3 and the Registration Statement (via signature by Xin as attorney-in-fact). Bi served on the Company's Audit Committee.

19. Defendant Heqing Yao was, at all relevant times, a member of the Board. Yao signed the Form F-6, Amendment No. 1 to the Form F-6 (via signature by Xin as attorney-in-fact), the Form F-1, Amendment Nos. 1, 2, 3 and the Registration Statement (via signature by Xin as attorney-in-fact). Yao served on the Company's Audit Committee.

20. Defendant Jing Liu was, at all relevant times, a member of the Board. J. Liu signed the Form F-6, Amendment No. 1 to the Form F-6 (via signature by Xin as attorney-in-fact), the Form F-1, Amendment Nos. 1, 2, 3 and the Registration Statement (via signature by Xin as attorney-in-fact). J. Liu served as the Chairperson of the Company's Audit Committee

due to her "accounting and financial management expertise as required by Nasdaq corporate governance rules." On September 23, 2011, the Company announced that J. Liu had resigned her positions on the Board's Audit Committee and Compensation Committee, and on November 11, 2011 announced that J. Liu had also resigned all remaining Board positions, as discussed herein.

21.     Defendant Donald J. Puglisi ("Puglisi") was SinoTech's Managing Director and the "duly authorized representative in the United States of SinoTech Energy Limited." Puglisi signed the Form F-6, Amendment No. 1 to the Form F-6 (via signature by Xin as attorney-in-fact), and all Form F-1 Registration Statements.

22.     Guoqiang Xin, Qingzeng Liu, Boxun Zhang, Xiaoxuan Bi, Heqing Yao, Jing Liu, and Donald J. Puglisi are collectively referred to hereinafter as the "Individual Defendants".

23.     SinoTech filed an IPO registration statement with the Securities and Exchange Commission ("SEC") on November 1, 2010 and amended it on November 3, 2010, the same day it became effective.

## OBLIGATIONS OF THE DIRECTOR AND OFFICER DEFENDANTS

24.     Each of the Individual Defendants owed to SinoTech the duty to exercise loyalty, good faith, due care and diligence in the management and administration of the affairs of the Company and in the use and preservation of its property and assets, and owed the duty of full and candid disclosure of all material facts related thereto.  Further, the Individual Defendants owed a duty to SinoTech to ensure that SinoTech operated in compliance with all applicable federal and state laws, rules, and regulations; and that SinoTech not engage in any unsafe, unsound, or illegal business practices.

25.     To discharge these duties, the Individual Defendants were required to exercise reasonable and prudent supervision over the management, policies, practices, controls, and

financial and corporate affairs of SinoTech.  By virtue of this obligation, the Individual Defendants were required, among other things, to:

    (a) manage, conduct, supervise, and direct the employees, businesses and affairs of SinoTech in accordance with laws, rules and regulations, and the charter and by-laws of SinoTech;

    (b) neither violate nor knowingly or recklessly permit any officer, director or employee of SinoTech to violate applicable laws, rules and regulations and to exercise reasonable control and supervision over such officers and employees; ensure the prudence and soundness of policies and practices undertaken or proposed to be undertaken by SinoTech;

    (c) remain informed as to how SinoTech was, in fact, operating, and upon receiving notice or information of unsafe, imprudent or unsound practices, to make reasonable investigation in connection therewith and to take steps to correct that condition or practice;

    (d) supervise the preparation, filing and/or dissemination of any SEC filing, press releases, audits, reports or other information disseminated by SinoTech and to examine and evaluate any reports of examinations or investigations concerning the practices, products or conduct of officers of SinoTech and to make full and accurate disclosure of all material facts, concerning inter alia, each of the subjects and duties set forth above;

    (e) preserve and enhance SinoTech's reputation as befits a public corporation and to maintain public trust and confidence in SinoTech as a prudently managed institution fully capable of meeting its duties and obligations;

    (f) to avoid wasting the Company's assets;

    (g) to maximize the value of the Company's stock; and

    (h) to ensure that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times.

26. Each of the Defendants further owed to SinoTech and the shareholders the duty of loyalty requiring that each favor SinoTech's interest and that of its shareholders over their own while conducting the affairs of the Company and refrain from using their position, influence or knowledge of the affairs of the Company to gain personal advantage, which requires, inter alia, scrutiny of interested party transactions and rejection of such transactions which are unfair to the Company or evince corporate waste. The duty of loyalty further requires a duty of candor requiring full and candid disclosure of all facts relevant to any potential conflict of interest and said interested party transaction.

## SUBSTANTIVE ALLEGATIONS

27. SinoTech's registration statement contained a prospectus, which SinoTech filed with the SEC on November 4, 2010.

28. SinoTech's IPO included the sale of nearly 20 million American Depository Shares ("ADS") at a price of $8.50 per share, from which SinoTech raised more than $120 million.

29. SinoTech's IPO registration statement stated, among other things, that the company would use funds raised in the IPO for two purposes: $51 million to repay a credit line used to purchase LHD Units, and $69 million to purchase additional lateral hydraulic drilling units ("LHD Units"). SinoTech did not use the IPO proceeds as represented.

30. Instead, SinoTech only contracted to purchase 15 LHD Units from a sole supplier located in Lake Charles, Louisiana, for a total price of approximately $18.9 million, of which SinoTech paid only $16 million. As a result, the supplier only delivered 11 LHD Units, because SinoTech failed to complete payment.

31. Moreover, SinoTech did not spend significant additional funds to modify or upgrade the LHD units it did acquire.

32. After the IPO, SinoTech overstated the value of its equipment in numerous filings and press releases.

33. On December 2, 2010, SinoTech issued its earnings release for fiscal year 2010, which ended on September 30, 2010. The 2010 earnings report listed assets of $165 million, of which $64 million was equipment. According to SinoTech's IPO registration statement and other filings, LHD Units comprised the vast majority of the company's equipment.

34. SinoTech repeated these figures in the balance sheet included in its fiscal year 2010 Form 20-F, which it filed March 31, 2011, signed by Xin, SinoTech's Chief Executive Officer, and certified by Xin and Zhang under Section 302 of the Sarbanes-Oxley Act of 2002.'

35. When SinoTech filed fiscal year 2010 Form 20-F, it owned no more than 10 LHD Units, worth approximately $13 million in total, well less than the $64 million in equipment value that SinoTech had represented.

36. On May 19, 2011, SinoTech issued its earnings release for the quarter ended March 31, 2011, which it included in a Form 6-K signed by Zhang and filed the following day. In it, SinoTech claimed dramatic increases to $255 million in assets, including $94 million in equipment.

37. SinoTech made nearly identical statements on August 4, 2011 when it issued its earnings release for the quarter ended June 30, 2011, which was included in a Form 6-K signed by Zhang and filed the following day.

38. As in prior financial statements, LHD Units comprised nearly all of SinoTech's equipment in the March 2011, and June 30, 2011 Earnings Releases. SinoTech, however, still owned no more than 11 LHD Units during this span, with an approximate valuation of $16 million in total, a far cry from the $94 million in equipment that it claimed. Hence, SinoTech grossly overstated the value of its equipment – thereby materially misleading investors.

39. In addition to this materially damaging news to the Company's reputation, on September 27, 2011, SinoTech filed a Form 6-K, attaching a September 23, 2011 press release in which it disclosed that Defendant Liu, SinoTech's Chairman, had engaged in a "potentially unauthorized" transfer of a "material portion" of SinoTech's cash from the Company's bank account and transferred it to a bank account Defendant Liu controlled (referred to herein as the "Liu Funds Transfer"). SinoTech had claimed that the funds have been returned, but upon information and belief this statement was false.

40. On April 23, 2012, the SEC filed a lawsuit in the U.S. District Court for the Western District of Louisiana, asserting claims under the Securities Act and Exchange Act against the Company and defendants. The SEC complaint confirms that defendant Liu had "misappropriated at least $40 million of SinoTech's cash between June 30, 2011 and August 2011" and then "stood by silently in August 2011 as SinoTech attempted to counter public accusations of fraud by claiming the company held $93 million in its bank accounts – a statement Liu and SinoTech knew was a lie." Additionally, Defendants went to great lengths to conceal the wrongful transfer and even stymied an internal investigation as further described below.

41. The September 23, 2011 press release revealed that Liu would "step" down from his "executive" role at the Company with "respect to its accounting and finance functions" and agreed not to "have any access to the Company's bank accounts, funds and/or other accounting and finance functions, or seek any control or influence over the Company's treasury, finance,

and/or accounting functions." Unfortunately, this was too little too late.

42. The September 23, 2011 press release further revealed that Defendant Zhang resigned as CFO and as a member of the SinoTech Board of Directors (the "Board"). Defendant Jing Liu ("J. Liu") resigned from her positions on the Audit Committee and Compensation Committees of the Board.  SinoTech's auditor, Ernst & Young Hua Ming ("E&Y") announced its resignation and had withdrawn its audit opinion on the Company's financial statements for the period ended September 30, 2010, indicating that its opinion should no longer be relied upon. The September 23 press release confirmed that the resignations of Zhang, J. Liu and E&Y were based, in part, upon the Liu Funds Transfer stating, *inter alia*, that "they have been unable to investigate the facts and circumstances surrounding [the Liu Funds Transfer] to their satisfaction" and "that the events relating to such transactions have caused them to lose confidence in the accuracy and reliability of the Company's previously filed financial statements."

43. After all of this negative news, on October 4, 2011, the Company issued yet another bombshell press release, stating that J. Liu had resigned from her Board positions, including as the Chair of the Special Committee (the "Special Committee"), and that the Special Committee was "not allowed to exercise independently the authority vested in it by the Board to conduct an investigation." This press release also indicated that the Special Committee's counsel, Shearman & Sterling LLP, had resigned. In addition, the press release announced that the Company's counsel, Simpson Thacher & Bartlett LLP, had also resigned

44. On November 11, 2011, as a result of all of this bad news, the Company issued a press release advising that it had withdrawn its appeal of the NASDAQ delisting because it was "unable to cure the issues identified by NASDAQ and disclosed by the Company on September

11

21 and October 4, 2011." This press release reveals that "the Special Committee of the Board has decided to discontinue the independent investigation into allegations" made in the Report and "other matters."

45.     On January 6, 2012, NASDAQ filed a Form 25 (Notification of Removal From Listing and/or Registration Under Section 12(b) of the Securities Exchange Act of 1934), seeking to remove the Company's stock from trading on NASDAQ. Effective January 17, 2012, SinoTech stock was formally delisted from NASDAQ, as a result of defendants' wrongdoings.

46.     Furthermore, the purpose of the independent investigation was to prevent further harm to the Company through continued regulatory actions and potential shareholder litigation. By discontinuing their investigation, the Company's share price has plummeted, after being delisted from the NASDAQ, thereby damaging both the reputation of the Company and investors.

47.     In the wake of these disclosures, consequently, on August 24, 2011, a securities fraud class action was filed by investors against the Company and certain of its officers and directors, seeking substantial damages from the Company and others.

48.     Because the Company's officers and directors facilitated the Liu Funds Transfer and effectively discontinued the independent investigation, they cannot reasonably be expected to initiate litigation on the Company's behalf.  In fact, such action would require them to pursue litigation against themselves.  Indeed, as alleged above, the purported internal investigation that was commenced to investigate these matters were halted and cancelled by the Company.

49.     As a result of the Individual Defendants' deliberate action and/or inaction permitting the Liu Funds Transfer and facilitating the discontinuation of the independent investigation, the Individual Defendants have breached their fiduciary duties owed to the

Company.

## FIRST CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY
**(Against All Individual Defendants)**

50.   Plaintiff incorporates by reference each allegation contained in each preceding paragraph above as if fully set forth herein.

51.   The Individual Defendants all owed a fiduciary duty to SinoTech and its stockholders, the duty to exercise loyalty, good faith, due care and diligence in the management and administration of the affairs of the Company, as well as in the auditing and reporting of the Company, and owed the duty of full and candid disclosure of all material facts thereto.

52.   As fiduciaries, to discharge these duties, the Individual Defendants were required to exercise prudent supervision over the management, policies, practices, controls, and financial and corporate affairs of SinoTech.

53.   In performing the aforementioned services, the Individual Defendants all breached, and continue to breach, their fiduciary duties, causing damages to SinoTech, by, *inter alia*, (i) agreeing to and participating with and/or aiding and abetting one another in a deliberate course of action designed to divert corporate assets to themselves and/or other Company insiders and their family members; (ii) failing to discover and prevent SinoTech's violations of law (iii) failing to properly implement, oversee and maintain appropriate and adequate internal controls, practices and procedures for SinoTech; (iv) failing to ensure that SinoTech operated in compliance with all applicable federal and state laws, rules, and regulations requiring the dissemination of accurate financial statements and restricting the misuse of material non-public information; (v) failing to ensure that SinoTech not engage in any unsafe, unsound, or illegal business practices;  (vi) causing SinoTech to be sued for, and exposed to, liability for violations

13

of the anti-fraud provisions of the federal securities laws and potential criminal liability, as previously described herein.

54. The Individual Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit themselves at the expense of the Company and was made without any reasonable efforts to ensure the Company's interests were protected.

55. The Individual Defendants' breaches of their fiduciary duties have proximately caused, and will continue to cause, SinoTech to suffer substantial monetary damages as a result of the wrongdoing herein, as well as further and even greater damage in the future, including exposure to forfeitures, fines and penalties, damage to SinoTech's reputation and good will, the resulting loss of business and business opportunities, increased costs of capital, and otherwise.

56. SinoTech has been directly and substantially injured by reason of the Individual Defendants intentional breach and/or reckless disregard of their fiduciary duties to the Company. Plaintiffs, as shareholders and representatives of SinoTech, seek damages and other relief for the Company, in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
## <u>GROSS MISMANAGEMENT</u>
**(Against All Individual Defendants)**

57. Plaintiff incorporates by reference each allegation contained in each preceding paragraph above as if fully set forth herein.

58. The Individual Defendants had a duty to the Company and its shareholders to prudently supervise, manage and control the Company's operations and business.

59. The Individual Defendants, by their actions and by engaging in the wrongdoing described herein, abandoned and abdicated their responsibilities and duties with regard to

prudently managing the businesses of the Company in a manner consistent with the duties imposed upon them by law.  By committing the misconduct alleged herein, Defendants breached their duties of due care, diligence and candor in the management and administration of the Company's affairs and in the use and preservation of its assets.

60. During the course of the discharge of their duties, the Individual Defendants knew or recklessly disregarded the unreasonable risks and losses associated with their misconduct, yet the Individual Defendants caused the Company to engage in the scheme complained of herein which they knew had an unreasonable risk of damage to the Company, thus breaching their duties to the Company.  As a result, the Individual Defendants grossly mismanaged the Company.

61. As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of fiduciary duties, including the duty of loyalty, as alleged herein, SinoTech has incurred, and will likely incur in the future, massive financial damages, as well damages to its reputation and goodwill.

62. As a result of the misconduct and breaches of fiduciary duty alleged herein, each of the Individual Defendants is liable to the Company.

## THIRD CAUSE OF ACTION

### CORPORATE WASTE

**(Against All Individual Defendants)**

63. Plaintiff incorporates by reference each allegation contained in each preceding paragraph above as if fully set forth herein.

64. By failing to properly consider the interests of the Company and its shareholders, by failing to conduct proper supervision, and by transferring over $40 million in Company funds

to Qingzeng Liu for no apparent business, the Individuals Defendants have caused the Company to waste valuable corporate assets.

65. As a result of Defendants' corporate waste, they are liable to the Company.

## FOURTH CAUSE OF ACTION
## RESTITUTION/UNJUST ENRICHMENT
### (Against Defendant Qingzeng Liu)

66. Plaintiff incorporates by reference each allegation contained in each preceding paragraph above as if fully set forth herein.

67. Defendant Qingzeng Liu was unjustly enriched by his receipt and retention of benefits from the self-interested transactions and the proceeds he received therefrom, as alleged herein, and it would be unconscionable to allow him to retain the benefits thereof.

68. To remedy Defendant Qingzeng Liu's improper gains and to avoid unjust enrichment, the Court should order Qingzeng Liu to disgorge to the Company all of the funds he has received from the self-interested transactions.

## FIFTH CAUSE OF ACTION
## CONTRIBUTION AND INDEMNIFICATION
### (Against All Individual Defendants)

69. Plaintiff incorporates by reference all paragraphs above as if set forth herein. SinoTech is alleged to be liable to various persons, entities and/or classes by virtue of the same acts or circumstances as are alleged herein to give rise to the Individual Defendants' liability to SinoTech.

70. In addition, the Individual Defendants' misconduct and wrongdoing, and the disclosures and events described herein, have had, and will continue to have, a series of deleterious effects on SinoTech, including but not limited to: (i) Exposure to forfeitures, fines, and penalties; (ii) Loss of business opportunities; (iii) Damage to SinoTech's reputation and

good will; (iv) Loss of existing or renewal business; (v) Increased costs of capital; (vi) Loss of confidence of the investing public in the integrity and management of SinoTech, thereby resulting in SinoTech losing market value and increasing SinoTech's cost of capital; and (vii) As a result of the Individual Defendants' misconduct, SinoTech is now exposed to SEC scrutiny and inquiry, and to suit by investors for losses resulting from their misconduct and fraudulent activities, thereby, at a minimum, causing the Company to incur unnecessary direct and indirect investigatory, litigation and administrative costs, and potentially resulting in awards, judgments or settlements against SinoTech.

71.   By reason of the foregoing violations of law and other related misconduct described herein, SinoTech's alleged liability arises, in whole or in part, from the intentional, knowing, reckless, disloyal and bad faith acts or omissions of the Individual Defendants as previously alleged herein.

72.   SinoTech is therefore entitled to contribution and indemnification from each of the Defendants in connection with all such claims that have been, are or may in the future be asserted against SinoTech by virtue of Defendants' misconduct and wrongdoing.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1. For damages against Defendants in an amount to be proven at trial;
2. For attorneys' fees as legally permitted;
3. For costs of suit incurred herein;
4. For pre-judgment and post-judgment as allowable by law;
5. For other further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury for all causes and issues so triable.

Dated:  November 16, 2012                    Respectfully submitted,

                                             THE ROSEN LAW FIRM, P.A.

                                             /s/ Phillip Kim
                                             Phillip Kim, Esq. (PK 9384)
                                             Laurence M. Rosen, Esq. (LR5733)
                                             275 Madison Avenue, 34th Floor
                                             New York, NY  10016
                                             Phone: (212) 686-1060
                                             Fax: (212) 202-3827

                                             Attorneys for Plaintiff

## VERIFICATION

I JOHN P. HOLZMAN, am the plaintiff in the within action and am a citizen of the State of Ohio. I have read the foregoing complaint and know the contents thereof. The allegations of the complaint are true of my personal knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 15, of November 2012.

*[signature]*
JOHN P HOLZMAN