UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: SEP 1 8 2015
```

John Holzman,

                Plaintiff,

        –v–

Guoqiang Xin, et al.,

                Defendants.

12-cv-8405 (AJN)

MEMORANDUM &
ORDER

ALISON J. NATHAN, District Judge:

This is a derivative suit brought by a shareholder of nominal Defendant SinoTech Energy Limited ("SinoTech" or the "Company") against the company's directors and officers. The Plaintiff, John Holzman ("Holzman"), a current owner of SinoTech stock, alleges that various board members and executives of the Company breached their fiduciary duties to SinoTech by failing to report that the Company's majority shareholder, Qingzeng Liu ("Liu"), personally enriched himself through the misappropriation of millions of dollars in SinoTech assets. Liu now moves to dismiss the complaint for lack of personal jurisdiction and on grounds of *forum non conveniens*. For the following reasons, Liu's motion is GRANTED on the basis of *forum non conveniens*.

I.      **BACKGROUND**

    A.    **The Parties**

Plaintiff Holzman is a citizen and resident of the state of Ohio. *See* Compl. ¶ 13. He has continuously held SinoTech stock since its initial public offering ("IPO") in 2010. *Id.*

SinoTech was an oil services company, incorporated in the Cayman Islands, but with substantially all of its operations in the People's Republic of China. *See* Compl. ¶¶ 3, 14; Liu

Decl. ¶¶ 8, 10.  Defendant Liu was, at all relevant times, Chairman of SinoTech's Board of

Directors (the "Board") and the Company's controlling shareholder.  *See* Compl. ¶ 17; Liu Decl.

¶ 8.  Liu has lived his entire life in the People's Republic of China.  *See* Liu Decl. ¶ 2.  He has

never lived in New York, nor has he rented an apartment, owned real property, possessed a

mailing address or telephone number, or owned any assets within New York.  *Id.* ¶¶ 3-5.

Liu's co-defendants in this case are other members of the SinoTech Board and a number

of the Company's executives, including Guoqiang Xin ("Xin"), a Board member and the

Company's Chief Executive Officer; Boxun Zhang ("Zhang"), a Board member and the

Company's Chief Financial Officer; Xiaoxuan Bi ("Bi"), the Company's Chief Economist and a

Board member; Heqing Yao ("Yao"), a Board member; Jing Liu ("J. Liu"), a Board member;

and Donald J. Puglisi ("Puglisi"), SinoTech's Managing Director and its authorized

representative in the United States.  Compl. ¶¶ 15-21.  Collectively, Liu, Xin, Zhang, Bi, Yao, J.

Liu, and Puglisi are the "Individual Defendants" in this case.  As explained in greater detail

below, Defendants Liu and Xin are the only Defendants to have been properly served to date.

*See* Dkt. Nos. 15, 32-33.

### B.    The Alleged Misappropriation Scheme

In November 2010, SinoTech commenced an IPO of American Depository Shares

("ADS").  *See* Compl. ¶ 3.  As part of that process, on November 4, 2010, SinoTech filed a

registration statement and prospectus with the Securities Exchange Commission ("SEC").  *Id.* ¶

27.  The registration statement explained that SinoTech intended to use $69 million of the

proceeds from the IPO for the purchase of heavy machinery, namely, a number of new lateral

hydraulic drilling units ("LHD Units").  *Id.* ¶ 29.  The remainder of the proceeds would be used

to repay a credit line.  *Id.*

The IPO ultimately resulted in the sale of approximately 20 million ADS at a price of $8.50 per share, raising more than $120 million for SinoTech. *Id.* ¶ 28. Despite stating in its registration statement that it intended to allocate $69 million of the proceeds to the purchase of heavy machinery, SinoTech ultimately only contracted to purchase 15 LHD Units, at a net price of approximately $18.9 million, from a single supplier in Lake Charles, Louisiana. *Id.* ¶ 30. Furthermore, SinoTech ultimately only paid the supplier $16 million and only 11 of the LHD Units were ever delivered to SinoTech. *Id.*

On December 2, 2010, SinoTech issued its earnings report for fiscal year 2010, representing that the Company held assets worth $165 million, including $64 million in equipment, the vast majority of which comprised LHD Units. *Id.* ¶ 33. According to Plaintiff, SinoTech in fact possessed no more than $13 million worth of equipment at the time of this report. *Id.* ¶ 35. Similarly, on May 19, 2011, SinoTech issued a quarterly earnings report for the first quarter of 2011. In the report, which included a Form 6-K, SinoTech claimed $255 million in assets, including $94 million in equipment. *Id.* ¶ 36. SinoTech made nearly identical statements on August 4, 2011 regarding the second quarter of 2011. *Id.* ¶ 37.

On September 27, 2011, SinoTech filed a Form 6-K disclosing that Defendant Liu had engaged in a "potentially unauthorized" transfer of a "material portion" of SinoTech's cash from the Company's bank account to a bank account he personally controlled. *Id.* ¶ 39. A September 23, 2011 press release attached to the Form 6-K indicated that Liu would step down from his executive role at the company. *Id.* ¶ 41. It further indicated that, in light of the unauthorized transfer, Zhang would resign as Chief Financial Officer and a member of the Board and that J. Liu would resign from her positions on the Audit Committee and Compensation Committee of the Board. *Id.* ¶ 42. The Company's auditor, Ernst & Young Hua Ming, announced its

resignation and that it had withdrawn its audit opinion on the Company's financial statements. *Id.* On January 6, 2012, NASDAQ filed a Form 25 with the SEC seeking to remove SinoTech's stock from trading on NASDAQ. *Id.* ¶ 45. The Company's delisting was finalized on January 17, 2012. *Id.*

In August 2011, a securities class action was filed in the Southern District of New York against SinoTech and a number of its officers and Board members (including Liu) on behalf of all individuals who purchased SinoTech ADS pursuant or traceable to the IPO. *See Athale v. SinoTech Energy Ltd.*, No. 11-CV-5831 (AJN), Dkt. No. 1. A settlement was reached in that case on March 25, 2013. *See id.*, Dkt. No. 81 (the "Securities Class Action Settlement"). On April 23, 2012, the SEC filed a lawsuit against SinoTech in the Western District of Louisiana, bringing claims under the Securities Act and Exchange Act. *See* Compl. ¶ 40. The SEC's complaint alleged that Liu had "misappropriated at least $40 million of SinoTech's cash between June 30, 2011 and August 2011" and then "stood by silently in August 2011 as SinoTech attempted to counter public accusations of fraud by claiming the company held $93 million in its bank accounts – a statement Liu and SinoTech knew was a lie" *Id.*

### C.   Procedural History of the Case

The instant action was filed on November 16, 2012. *See* Dkt. No. 1. Plaintiff had difficultly serving the Individual Defendants in this case and on February 8, 2013, wrote to the Court seeking leave under Federal Rule of Civil Procedure 4(f)(3) to, *inter alia*, effectuate service on the Individual Defendants by serving the law firm of Wilson, Sonsini Goodrich & Rosati ("Wilson Sonsini"), which had represented the Individual Defendants in the earlier securities class action. *See* Dkt. No. 7. On February 20, 2013, the Court denied the Plaintiff's request and ordered that he first attempt service under the Hague Convention before seeking

4

leave for alternative service under Rule 4(f)(3). *See* Dkt. No. 9.  On March 4, 2013, the Court

granted Plaintiff leave to serve limited interrogatories on Wilson Sonsini for the sole purpose of

obtaining identifying information regarding the Individual Defendants. *See* Dkt. No. 11.

On August 19, 2013, Plaintiff filed a letter updating the Court on the status of service

under the Hague Convention. *See* Dkt. No. 18.  The letter indicated that Plaintiff had attempted

service on Defendants Liu, Xin, Zhang, Bi, and Yao. *Id.* According to the letter, authorities

within China had successfully executed service on Xin, had failed to execute service on Yao and

Liu, and were still attempting service on Zhang and Bi. *Id.* At that point, Plaintiff was still in

the process of attempting to locate J. Liu. *Id.* Finally, Plaintiff indicated that they would renew

their application for leave under Rule 4(f)(3) to effect service on Yao and Liu through service on

Wilson Sonsini. *Id.*

The Court ordered briefing on the question of whether Plaintiff could perform alternative

service on Liu and Yao. *See* Dkt. No. 22.  On July 1, 2014, after consideration of the parties'

briefing, the Court granted Plaintiff's request to serve Liu through Wilson Sonsini, but denied the

request as to Yao. *See* Dkt. No. 32.  On July 10, 2014, Plaintiff executed service on Liu by

leaving a copy of the summons and complaint with an officer manager at Wilson Sonsini.  *See*

Dkt. No. 33.  Several months later, on September 15, 2014, Liu filed the instant motion to

dismiss. *See* Dkt. No. 40.

## II.    LEGAL STANDARD

Liu moves first to dismiss the complaint for lack of personal jurisdiction.  "On a Rule

12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of

showing that the court has jurisdiction over the defendant." *Metropolitan Life Ins. Co. v.*

*Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996) (citing *Robinson v. Overseas Military*

*Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994)).  "Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction." *Id.* at 566-67.  Where an evidentiary hearing has not been held, "the plaintiff need make only a prima facie showing of jurisdiction." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1994)).

On this procedural posture, the Court construes the pleadings and any supporting materials in the light most favorable to the plaintiffs, resolving any doubts in favor of jurisdiction. *See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.,* 722 F.3d 81, 85 (2d Cir. 2013). "At [this] preliminary stage, the plaintiff's prima facie showing may be established solely by allegations." *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990). However, the Court does not draw "argumentative inferences" in plaintiff's favor nor does it accept as true a legal conclusion couched as a factual allegation. *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992) (citing *Norton v. Larney*, 266 U.S. 511, 515 (1925)).  Moreover, "[b]ecause a motion to dismiss for lack of personal jurisdiction is inherently a matter requiring the resolution of factual issues outside of the pleadings, all pertinent documentation submitted by the parties may be considered in deciding the motion." *Woods v. Pettine*, No. 13-CV-290 (PGG), 2014 WL 292363, at *1 (S.D.N.Y. Jan. 27, 2014) (internal quotation marks, citations, and alterations omitted).

Plaintiff also moves to dismiss on grounds of *forum non conveniens.*  Dismissal on such grounds is appropriate only "when trial in the chosen forum would 'establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.'" *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)

(quoting *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947) (alterations in original)).

Courts within this Circuit apply a three-step process to determine, within their substantial discretion, whether dismissal is appropriate on *forum non conveniens* grounds. *See Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005) (citing *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73-74 (2d Cir. 2001) (en banc)). "At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum. At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute. Finally, at step three, a court balances the private and public interests implicated in the choice of forum." *Id.* (internal citations omitted); *see also Iragorri*, 274 F.3d at 73-74.

## III.   DISCUSSION

If a district court can "readily determine that it lacks jurisdiction" over a defendant, then dismissing on personal jurisdiction grounds is generally the best means of resolving the case. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 436 (2007). But if "personal jurisdiction is difficult to determine," then a court "properly takes the less burdensome course" of dismissing on grounds of *forum non conveniens* if the considerations affecting that inquiry "weigh heavily in favor of dismissal." *Id.* Here, although there is good reason to question whether this Court may exercise personal jurisdiction over Liu, the most straightforward approach is to dismiss the case on the basis of *forum non conveniens*.

### A.   Personal Jurisdiction

Plaintiff's only proffered basis for personal jurisdiction rests on the prong of New York's long-arm statute that covers non-domiciliaries who "transact[] any business within the state or contract[] anywhere to supply goods or services in the state." *See* N.Y. C.P.L.R. § 302(a)(1). In

applying section 302(a)(1), a court must determine, first, whether the defendant "transact[ed] any business in New York" and, second,  whether the plaintiff's causes of action arise out of that transaction of business.  *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (internal quotation marks omitted).  Here, although Holzman has shown that Liu transacted business in New York, it is far less clear that Holzman's claims *arise out of* Liu's New York business transactions.

With respect to the first prong, "the overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails [him]self of the privilege of conducting activities within New York." *Ehrenfeld v. Bin Mahfouz*, 9 N.Y.3d 501, 508 (2007) (internal quotation marks, citations, and alterations omitted).  Where, as here, the defendant is an individual acting in his corporate capacity, the "defendant may be subject to specific personal jurisdiction . . . where the plaintiff can show that the corporation was acting as the agent of the officer." *Duravest, Inc. v. Viscardi, A.G.*, 581 F. Supp. 2d 628, 634 (S.D.N.Y. 2008).  To make such a showing, the plaintiff "need only convince the court that [the corporation] engaged in purposeful activities in this State in relation to [the] transaction for the benefit of and with the knowledge and consent of the [officer defendant] and that [the officer defendant] exercised some control over [the corporation] in the matter." *Beatie & Osborn LLP v. Patriot Sci. Corp.*, 431 F. Supp. 2d 367, 389 (S.D.N.Y. 2006) (alterations in original) (quoting *Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 44 (N.Y. 1988)).  Holzman has made at least a prima facie case that SinoTech's New York IPO was done with Liu's knowledge and consent, for his benefit, and that he exercised some control over SinoTech in the matter.  *See, e.g.*, Compl. ¶ 17 (alleging Liu signed the relevant SEC forms for the IPO, including the Form F-6 and registration statement); *see also Citicorp Int'l Trading Co. v. W. Oil & Ref. Co.*, 708 F. Supp. 86,

89 (S.D.N.Y. 1989) (defendant ratified acts of agent by signing transactional documents, thus giving rise to jurisdiction under section 302(a)(1)).  Liu has therefore transacted business in New York for purposes of section 302(a)(1).

Holzman must also demonstrate, however, that his claims arise out of Liu's transactions in New York.  As the Second Circuit has explained, "New York courts have held that a claim 'aris[es] from' a particular transaction when there is 'some articulable nexus between the business transacted and the cause of action sued upon,' or when 'there is a substantial relationship between the transaction and the claim asserted.'"  *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (alterations in original) (internal citations omitted).  Specifically, "where at least one element" of a plaintiff's claim "arises from the [defendant's] New York contacts, the relationship between the business transaction and the claim asserted supports specific jurisdiction under the statute."  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 169 (2d Cir. 2013) (quoting *Licci v. Lebanese Canadian Bank*, 984 N.E.2d 893, 901 (N.Y. 2012).

Holzman's argument on this prong of the jurisdictional analysis is lacking.  The central allegation in Holzman's complaint is that the Individual Defendants breached fiduciary duties they owed to SinoTech when they "approved, acquiesced, and/or turned a blind eye" to transactions between SinoTech and Liu—specifically, the transfer of $40 million.  *See* Compl. ¶¶ 2, 4.  Holzman has not made clear, however, how any of the elements of this alleged breach arise out of Liu's New York contacts.  All Holzman has offered on this essential point is (1) that Liu stole $40 million of the proceeds from SinoTech's New York IPO and (2) that conducting an IPO in New York was "the first stage in his plan that culminated in Liu's theft of the IPO proceeds."  *See* Opp. Br. at 10.

With respect to the first argument, the fact that SinoTech raised $120 million in a New York IPO does not link Liu's alleged misappropriation of $40 million, more than six months after the IPO, to New York. Nowhere does Holzman claim that the $40 million transferred to Liu was taken *directly* from the IPO in New York. Instead, the complaint cites to SinoTech's own press release, which explains that the funds were taken from the Chinese bank account of the company's Chinese corporate entity. *See* Compl. ¶ 39. That press release succinctly summarizes the concern in this case, namely, that there was a "potentially unauthorized transfer in 2011 . . . of a material portion of the Company's cash from a *Chinese* bank account held in the name of the Company's *Chinese* operating subsidiary to a bank account controlled by the Chairman [Liu]" in *China. See* Brutlag Decl., Ex. C at 1 (emphasis added); Liu Decl. ¶ 2. Perhaps some, or even all, of that money stemmed from the New York IPO. But the fact that Liu's New York contacts may have been "a link in the chain of causation leading to plaintiff's claims" is not, on its own, sufficient for jurisdiction under section 302(a)(1)). *Faherty v. Fender*, 572 F. Supp. 142, 147 (S.D.N.Y. 1983). Holzman's second argument, that the New York IPO was step one in Liu's plan to steal $40 million, attempts to more directly tie the claims in this case to New York. But Holzman has offered little to make such an allegation plausible—the complaint simply provides no details of this supposed multi-stage scheme to steal, in China, funds originating in New York. To be sure, Holzman's allegations would be sufficient for personal jurisdiction over Liu in a suit challenging the underlying securities fraud. It is the *link* between that alleged fraud and the alleged misappropriation here that Holzman must substantiate in order for the claims he has raised to arise out of Liu's New York's contacts.

Given these difficulties with Holzman's personal jurisdiction arguments, the Court declines to definitively resolve the issue.[1]  Regardless of whether there is a close enough nexus between the New York IPO and Holzman's causes of action to satisfy New York's long-arm statute, any such nexus is sufficiently attenuated to call into question the appropriateness of this district as the forum for resolving Holzman's claims.  For the reasons that follow, the Court concludes that the case should be dismissed on *forum non conveniens* grounds.

**B.**     ***Forum Non Conveniens***

Within the Second Circuit, courts consider three factors in assessing a request to dismiss on *forum non conveniens*: (1) a determination of what degree of deference is owed to the plaintiff's choice of forum; (2) the extent to which an adequate alternative forum exists; and (3) a balancing of public and private interest factors, weighing the relative merits of adjudicating in the plaintiff's chosen forum or an alternative forum proposed by the defendant.  *See Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 70 (2d Cir. 2003).

As to the first factor, a plaintiff's choice of forum is "generally entitled to great deference" when the plaintiff elects to sue in his home forum.  *See Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001) (en banc) (citing *Koster v. (Am.) Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 524 (1947)).  Conversely, "a foreign plaintiff's choice deserves less deference." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981).  In this case, the nominal Plaintiff is SinoTech itself, an entity located in China.  Holzman correctly notes that, when determining the home forum for a plaintiff in derivative actions, courts look to the derivative plaintiff, rather than the corporate entity.  *See Koster* 330 U.S. at 524 (considering derivative shareholder plaintiff's home forum in *forum non conveniens* analysis).  But Holzman is a

---

[1] Because the Court does not decide the issue of personal jurisdiction, Plaintiff's request for jurisdictional discovery, *see* Opp. Br. 11-12, is denied as moot.

11

resident of Ohio, not New York.  *See* Compl. ¶ 13.  And although a plaintiff "should not be compelled to mount a suit" in her home district if "she can be confident of" personal jurisdiction over the defendant in another U.S. district, *Iragorri*, 274 F.3d at 73, Liu's amenability to suit in New York is by no means clear.  Accordingly, Holzman's decision to bring this case in New York is entitled to less deference than if he had pursued the litigation in Ohio.  *See Fagan v. Deutsche Bundesbank*, 438 F. Supp. 2d 376, 381 (S.D.N.Y. 2006) (Florida resident's decision to sue German bank in New York afforded minimal deference).  Moreover, although Holzman's general preference for litigating in the United States, as compared to the Cayman Islands or China, may afford him some deference, "the plaintiff's ability to rely upon citizenship as a talisman against *forum non conveniens* dismissal is diminished" when "an American plaintiff chooses to invest in a foreign country and then complains of fraudulent acts occurring primarily in that country."  *Sussman v. Bank of Israel*, 801 F. Supp. 1068, 1073 (S.D.N.Y. 1992); *see also Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 191 (3d Cir. 2008).

Deference to Holzman's chosen forum is further diminished because he has brought suit in a representative capacity on behalf of numerous potential plaintiffs.  A plaintiff's "choice of forum is [] entitled to less deference where, as here, they are suing in a representative capacity." *Gilstrap v. Radianz Ltd.*, 443 F. Supp. 2d 474, 479 (S.D.N.Y. 2006), *aff'd*, 233 F. App'x 83 (2d Cir. 2007); *see also DeYoung v. Beddome*, 707 F. Supp. 132, 138 (S.D.N.Y. 1989) ("[A] plaintiff's choice of forum weighs far less heavily in a case . . . where plaintiffs sue strictly in a representative or derivative capacity.").  This diminished level of deference is due to the fact that the representative plaintiff has "only a small direct interest in a large controversy in which there are many potential plaintiffs, usually in many potential jurisdictions."  *Beddome*, 707 F.Supp. at

138.  In sum, the Court concludes that Holzman's decision to sue in New York is entitled to relatively little deference.

As to the second factor, an alternative forum is adequate if "the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *Pollux*, 329 F.3d at 75 (citing *Piper Aircraft*, 454 U.S. at 254 n.22).  Holzman does not appear to dispute that the Cayman Islands permit shareholder litigation against corporate officers. According to Liu's expert, the Cayman Islands recognize claims of breach of duty against corporate directors and has a well-developed body of fiduciary-duty law.  *See* Hollington Decl. ¶¶ 8-11.  Further, Mr. Lin, the only Defendant to appear in this case, has consented to service in the Cayman Islands.  *See* Liu Decl. ¶ 7; *see also* Liu Suppl. Decl. ¶ 3.  Holzman disputes this on the grounds that *all* of the Individual Defendants must consent to service before the alternative forum can be deemed adequate.  But Holzman cites no authority for this proposition, nor does he dispute Liu's contention that each of the Individual Defendants would be amenable to service under Cayman Islands law.  *See* Hollington Decl. ¶¶ 12-14.  To the extent Holzman argues that service in the Cayman Islands would be burdensome, the Court notes that Holzman has attempted to serve a number of the Individual Defendants, including Zhang, Bi, and Yao, in reference to this action and has, to date, been unsuccessful.  *See* Dkt. No. 18.  At least as of August 19, 2013, Chinese authorities were continuing to attempt service on Zhang and Bi.  *See id.*  Although serving the Individual Defendants in reference to an action in the Cayman Islands may pose similar difficulties, that does not diminish the fact that the Cayman Islands presents at least as adequate a forum as New York.  "As there is no dispute that defendant is amenable to process in the Cayman Islands, the Court finds that an adequate alternative forum exists."  *Doe v. Ritz Carlton Hotel Co., LLC*, 14-cv-4423, 2015 WL 221106, at *2 (E.D. Pa. Jan. 14, 2015).

Finally, the Court turns to the various private and public interest factors to be considered under *forum non conveniens*. The private interests of the litigants that the Court must consider are: (1) "the ease of access to evidence"; (2) "the availability of compulsory process"; (3) "the cost for cooperative witnesses to attend trial"; (4) "the enforceability of a judgment"; and (5) "all other practical matters that might shorten any trial or make it less expensive." *In re Alcon S'holder Litig.*, 719 F. Supp. 2d 263, 275-76 (S.D.N.Y. 2010) (citing *Gilbert,* 330 U.S. at 508). These factors are essentially neutral as between adjudicating here and in the Cayman Islands. Nearly all of the witnesses in this case, the SinoTech directors, are located outside of this judicial district. *See* Liu Decl. ¶ 11; Compl. ¶¶ 15-21. SinoTech's auditor is also based in China. *See* Liu Decl. ¶ 12. Holzman disputes this on the grounds that some of the evidence is located in New York, namely, the underwriters and their documents. *See* Opp. Br. at 18. But as the Court has noted, Holzman's claims do not attack the securities offering in New York but instead challenge the *subsequent* alleged misappropriation of money from SinoTech's Chinese bank account. Furthermore, regardless of whether this case is litigated here or in the Cayman Islands, it will be logistically burdensome to transport the evidence and witnesses to the adjudicating forum. *See Shanahan v. Vallat,* No. 03-CV-3496, 2004 WL 2937805, at *11 (S.D.N.Y. Dec. 19, 2004) ("[W]herever the case is adjudicated, at least some of the parties and witnesses will incur expenses and be inconvenienced by travel."); *see also Gary Friedrich Enterprises, LLC. v. Marvel Enters, Inc.*, 08-CV-1533 (BSJ) (JCF), 2008 WL 4129640, at *7 (S.D.N.Y. Sept. 4, 2008).

Holzman further argues that it will be difficult to obtain Chinese translators and experts in the Cayman Islands as compared to New York. But the location of such experts is "entitled to little weight in the *forum non conveniens* analysis." *Reers v. Deutsche Bahn AG*, 320 F. Supp.

2d 140, 161 (S.D.N.Y. 2004); *see also Gazis v. John S. Latsis (USA) Inc.*, 729 F. Supp. 979, 989

(S.D.N.Y. 1990) ("In addition, most of the documentary evidence is not in English, and most of

the potential witnesses do not speak English, requiring the parties to hire translators and

interpreters. Courts in this district have routinely dismissed cases with similar facts on forum

non conveniens grounds."). Moreover, litigating this case in New York would likely create

additional expert witness costs as "[w]ritten and oral testimony from experts . . . remains the

'basic mode of proving foreign law.'" *Jonas v. Estate of Leven*, No. 14-CV-3369 (SHS), 2015

WL 4522763, at *13 (S.D.N.Y. July 27, 2015) (quoting *Bigio v. Coca-Cola Co.*, No. 97-CV-

2858 (BSJ), 2010 WL 3377503, at *4 (S.D.N.Y. Aug. 23, 2010)).

Holzman also argues that, because the Cayman Islands do not allow for representations

on a contingency fee, he will be burdened by the need to acquire representation capable of

pursuing the case without such a fee scheme. However, "[i]f the lack of a contingent-fee system

were held determinative, then a case could almost never be dismissed because contingency fees

are not allowed in most foreign forums." *Murray v. British Broad. Corp.*, 81 F.3d 287, 292 (2d

Cir. 1996) (quoting *Coakes v. Arabian Am. Oil Co.*, 831 F.2d 572, 576 (5th Cir. 1987)); *see also*

*Alcon*, 719 F. Supp. 2d at 273 ("Courts in this District have also specifically and repeatedly held

that the availability of contingency fees, class actions, or federal-style discovery is not

dispositive of the adequacy of an alternative forum."). Moreover, as Liu notes, because the

Cayman Islands follows the English rule on attorney's fees, Holzman's lawyers would have the

opportunity to collect fees and costs after a successful prosecution of the case. *See* Grand Court

Rules (Rev. 2013), Order 62, R.4–19 (Cayman Is.). Finally, because the most relevant witnesses

and documents are located in China, Holzman will not be able to compel their testimony in New

York, which further supports a finding that the private factors disfavor adjudicating in this

forum. *See Murray v. British Broad. Corp.*, 906 F. Supp. 858, 864 (S.D.N.Y. 1995), *aff'd*, 81

F.3d 287 (2d Cir. 1996); *see also Jiali Tang v. Synutra Int'l, Inc.*, 656 F.3d 242, 252 (4th Cir.

2011) ("The court rightly observed that it lacks authority to compel the attendance of Chinese

witnesses, greatly undermining a fact-finding effort in Maryland.").

As to the public interest factors, the Court must consider "court congestion, interest of

forums in deciding local disputes, and interest in issues of foreign law being decided by foreign

tribunals." *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 74 (2d Cir. 1998). The

Court does not consider court congestion to be a significant consideration in this case. However,

the remaining two factors strongly support a finding of *forum non conveniens*.

All of Holzman's claims sound under Cayman Islands corporate law. *See* Compl. ¶¶ 50-

72. As the Second Circuit has explained, "questions relating to the internal affairs of

corporations are decided in accordance with the law of the place of incorporation." *Scottish Air*

*Int'l, Inc. v. British Caledonian Grp., PLC*, 81 F.3d 1224, 1234 (2d Cir. 1996). That is because

"only one State should have the authority to regulate a corporation's internal affairs—matters

peculiar to the relationships among or between the corporation and its current officers, directors,

and shareholders." *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982). It is precisely those

relationships that are at issue in this derivate suit, with Holzman standing in the shoes of

SinoTech to challenge the actions of individuals who were acting as the company's officers and

directors. *Cf. Druck Corp. v. The Macro Fund (U.S.) Ltd.*, No. 02-CV-664 (RO), 2007 WL

258177, at *2 (S.D.N.Y. Jan. 29, 2007) (applying Cayman Islands law to breach of fiduciary

duty claim). Holzman argues that this case implicates United States law because Liu allegedly

"lied in registration statements" that were filed in the United States. Opp. Br. at 17. But

Holzman is not bringing suit under any federal securities statutes, and so any false statements

16

would only be relevant to *this* case insofar as they constitute a violation of Liu's fiduciary duties. The scope of those duties is defined by Cayman Islands law.

Allowing this suit to proceed here would thus require the Court to oversee a case governed exclusively by foreign law. Although New York courts "are frequently called upon to decide issues of foreign law," *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, No. 97-CV-6124 (JGK), 1999 WL 307666, at *19 (S.D.N.Y. May 17, 1999), United States courts have "virtually no interest in resolving" disputes governed *exclusively* by foreign law. *Murray*, 81 F.3d at 293. Conversely, the Cayman Islands have a significant interest in the application of Cayman Islands law to the actions of a Cayman Islands corporation. *See In re Alcon S'holder Litig.*, 719 F. Supp. 2d at 275 (noting the "significant interest" in having "matters decided in the local forum in accordance with domestic law governing the case")

Similarly, this dispute is not local, in that it does not arise out of the Defendant's contacts with New York. The case principally involves a Cayman Islands corporation, headquartered in China, and a fraudulent transaction allegedly perpetrated by defendants in China. "When most of the events [take] place in a foreign forum or forums and involve mostly foreign parties, the United States and its citizens have less interest in the resolution of the action than the foreign forum." *Gilstrap*, 443 F. Supp. 2d at 490 (quoting *Saab v. Citibank, N.A.*, No. 00-CV-6784 (BSJ), 2001 WL 1382577, at *5 (S.D.N.Y. Nov. 7, 2001)). Although most of the evidence and witnesses are located in China, the Cayman Islands nonetheless possess a greater interest in resolving this dispute, which involves a Cayman Islands corporation and the application of Cayman Islands law, than New York.

In sum, Holzman's choice of forum is entitled to minimal deference, an adequate alternative forum exists in this case, and the balance of the private and public interest factors

weigh heavily in favor of the case proceeding in the Cayman Islands.  The Court therefore concludes that the case must be dismissed on *forum non conveniens* grounds.

### A. CONCLUSION

Liu's motion to dismiss is GRANTED on the basis of *forum non conveniens*.  This action is therefore dismissed in its entirety.[2]  This resolves Dkt. No. 40.

SO ORDERED.

Dated:  Sep. 18, 2015
      New York, New York

ALISON J. NATHAN
United States District Judge

---

[2] Although numerous defendants in this case have yet to be served, the *forum non conveniens* analysis would not change with respect to those defendants.  *See Banco De Serguros Del Estado v. J.P. Morgan Chase & Co.*, 500 F. Supp. 2d 251, 265 n.18 (S.D.N.Y. 2007) (noting that even if additional defendants had "been served and even in the more unlikely event that the Court had found that it had personal jurisdiction over them, it would still dismiss the case against them on the ground of *forum non conveniens*"); *see also LVAR, L.P. v. Bermuda Commercial Bank Ltd.*, No. 13-CV-9148 (AT), 2015 WL 1267368, at *5 (S.D.N.Y. Mar. 18, 2015) ("Although the Chesed Defendants have not yet appeared, the Court nonetheless dismisses the action in its entirety because the grounds for dismissal apply to all Defendants.").